# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** ) </br> ) </br> ) </br> **George Jerry Mboya,** ) </br> ) </br>     **Debtor.** ) </br> **Heather Hardy,** ) </br> ) </br>     **Plaintiff** ) </br> **vs.** ) </br> ) </br> **George Jerry Mboya,** ) </br> ) </br>     **Defendant.** ) | Case No. 17-20889-7-JMK </br></br> Adversary No. 17-6058 |

## PLAINTIFF HEATHER HARDY'S AMENDED COMPLAINT SEEKING DAMAGES AND EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)

COMES NOW Plaintiff Heather Hardy, through counsel Keith A. Wellman of the law firm Wellman Law LLC, and seeks to reduce to judgment and except from discharge under 11 U.S.C. § 523(a) debts owed to it by Debtor George Jerry Mboya ("Mboya"). In support, Plaintiff alleges as follows:

### I. PARTIES

1. Plaintiff Heather Hardy is an individual and a citizen of the State of Kansas residing at 13821 Haskins St., Overland Park, Johnson County, Kansas 66221.

2. Mboya is an individual and a citizen of the State of Kansas and can be served at 1717 N. Ridgeview Road, Apt 207, Olathe, KS 66061.

3. Mboya filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on May 17, 2017 (the "Petition Date").

### II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1334.

5. Mboya's Chapter 7 case is pending before this Court, under Case No. 17-20889.

6. Venue is proper in this district pursuant to 28 U.S.C. Section 1409(a).

7. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Hardy consents to entry of final orders or judgment by the Bankruptcy Court.

### III. GENERAL ALLEGATIONS

8. Hardy first met the defendant George Jerry Mboya in September 2015 through the dating website match.com.

9. Mboya told Hardy throughout their interactions that she was more important to him than family and that he wanted to marry her.

10. Mboya used claims of either having property well in excess of that needed to repay Hardy, including unencumbered real estate in Dubai worth $1,000,000, and the ability to repay her through other means such as the opening of a car lot and other car related transactions.

11. Mboya's solicitation of money from Hardy began in October of 2015 with a request to borrow money for a car repair with a promise to immediately repay Hardy.

12. In reliance on Mboya's statements Hardy lent $900 at that time and for that purpose to Mboya.

13. Hardy no longer believes that Mboya used the money for a car repair.

14. Later in October of 2015 Mboya stated that his mother had been killed in a car accident in London, England and asked to borrow money under the pretense that he needed to travel to London, pay for his mother's funeral and pay for travel while in London.

15. In reliance on Mboya's statements on October 9, 2015 Hardy lent $6,650 to Mboya.

16. Hardy now believes that Mboya did not have a recently deceased mother in London nor did he travel to London or pay for a funeral.

17. On October 12th and 13th of 2015 Mboya asked to borrow money for clothes for a funeral, for a plane ticket to return home, for a plane ticket to travel to Quebec Ontario and for

general spending while in Quebec. Mboya stated purpose for traveling to Quebec was to purchase vehicles that he could turn a substantial profit on.

18. In reliance on Mboya's statements on October 12th and 13th of 2015 Hardy lent $5,942.80 to Mboya.

19. Hardy no longer believes that Mboya used the $5,942.80 for the stated purposes.

20. From October 15-24, 2015 Mboya stated that he had lost his wallet while in Canada, was in jail in Canada, and needed to borrow money for bail, for general spending while in Canada, for resolving immigration issues and for returning home.

21. In reliance on Mboya's statements from October 15-24 of 2015 Hardy lent $6,729 to Mboya.

22. Hardy no longer believes that Mboya used the $6,729 for the stated purposes.

23. On October 30, 2015 Mboya requested a loan to finalize his citizenship and to pay rent.

24. In reliance on Mboya's statements Hardy lent $3,502 to Mboya.

25. Hardy no longer believes that Mboya used the $3,502 for the stated purposes.

26. On November 4, 2015 Mboya asked to borrow money for utilities and groceries.

27. In reliance on Mboya's statements Hardy lent $600 to Mboya.

28. Hardy no longer believes that Mboya used the $600 for the stated purposes.

29. On November 6, 2015 Mboya asked to borrow money for a rental space at Baron BMW where he stated that he worked.

30. In reliance on Mboya's statements Hardy lent $1,000 to Mboya.

31. Hardy no longer believes that Mboya used the $1,000 for the stated purpose.

32. On November 8, 2015 Mboya repaid $1,000.

33. Later in November of 2015 Mboya requested a loan to open his own car lot. .

34. In reliance on Mboya's stated purpose and in anticipation of providing Mboya with the means to earn money to repay her, over the course of approximately three weeks Hardy

came up with $10,000 to lend Mboya, this time even reaching out to her brother and father for approximately half of the funds.

35. Hardy no longer believes that Mboya used the $10,000 for the stated purpose.

36. On December 15, 2015 Mboya requested a loan to purchase a laptop computer for the supposed car lot.

37. In reliance on Mboya's statements Hardy lent $1,366.03 to Mboya for the stated purpose.

38. Hardy no longer believes that Mboya used the $1,366.03 for the stated purpose.

39. On December 17, 2015 Mboya asked that Hardy purchase a gold watch for him to "look the part" for his car lot.

40. In reliance on Mboya's statement Hardy lent $869.33 to Mboya.

41. Hardy no longer believes that Mboya needed the watch for the stated purpose.

42. Around December 17, 2015 Mboya also asked for a loan to pay for the rent of the car lot.

43. From December 17, 2015 to December 22, 2015 Hardy lent $2,442 to Mboya for this purpose.

44. Hardy no longer believes that the funds were used for this purpose.

45. On December 28, 2015 Mboya requested a loan for the stated purpose of traveling to Dubai to complete the sale of a $1,000,000 piece of real estate. While supposedly in Dubai Mboya stated that he had sold the home and would be able to repay all of the money borrowed from Hardy.

46. In reliance on Mboya's statements, Hardy lent $4,600 to Mboya.

47. Hardy no longer believes that Mboya used the $4,600 for the stated purpose.

48. On December 30, 2015 Mboya requested a loan to pay rent.

49. In reliance on Mboya's statements Hardy lent $700 to Mboya.

50. Hardy no longer believes that Mboya used the $700 for the stated purpose.

51. In January 2016 Mboya requested a loan for a plane ticket to Kenya and for travel within Kenya.

52. In reliance on Mboya's statements Hardy lent $2,432 to Mboya.

53. Hardy no longer believes that Mboya used the $2,432 for the stated purposes.

54. In February 2016 Mboya stated that he was in London, England and the he needed to borrow money for food, bills and to bail his sister out of jail so that he would have someone to take care of his daughter Layla.

55. In reliance on Mboya's statements Hardy lent $8,180 to Mboya.

56. Hardy no longer believes that Mboya used the $8,180 for the stated purposes.

57. In February and March of 2016 Mboya claimed that his daughter Layla was in the hospital and requested money for hospital bills and living expenses.

58. In reliance on Mboya's statements Hardy lent Mboya $26,940.

59. Hardy now believes the circumstances of a sick daughter in London were entirely fabricated.

60. In April of 2017 Mboya requested a loan to prevent the supposed inventory at his supposed car lot from being confiscated for nonpayment of rent.

61. In reliance on Mboya's statements Hardy lent $2,300 to Mboya.

62. Hardy no longer believes that Mboya used the $2,300 for the stated purposes.

63. Also in April of 2017 Mboya asked to borrow money for the stated purpose of paying his rent of residence.

64. In reliance on Mboya's statements Hardy lent $700 to Mboya.

65. Hardy no longer believes that Mboya used the $700 for the stated purpose.

66. In May of 2017 Mboya asked to borrow money to return from London and for attorney fees related to the supposed sale of property in Dubai.

67. In reliance on Mboya's statements Hardy lent $8,500 to Mboya.

68. Hardy no longer believes that Mboya used the $8,500 for the stated purposes.

69. In January of 2017 Mboya stated that he needed to borrow money related to a problem with his Green Card.

70. In reliance on Mboya's statements Hardy lent $4,500 to Mboya.

71. Hardy no longer believes the pretense regarding a Green Card.

72. In March of 2017 Mboya stated that he was in London, that he needed to pay money for a temporary Visa and that it would allow him to return to the United States to repay Hardy.

73. In reliance on Mboya's statements Hardy lent $3,000 to Mboya.

74. Hardy no longer believes that Mboya needed money for the stated purposes

75. In May of 2017 Mboya stated that he needed to borrow money for legal fees related to the supposed sale in Dubai.

76. In reliance on Mboya's statements Hardy lent $700 to Mboya.

77. Hardy no longer believes that Mboya needed money for the stated purpose.

78. In June of 2017 Mboya stated that he needed to borrow money for a replacement part for his Mercedes in order to sell it for $60,000 and that he would then turn all of those proceeds over to Hardy.

79. In reliance on Mboya's statements Hardy lent $1,200 to Mboya.

80. Hardy no longer believes that Mboya needed money for the stated purpose.

81. In June of 2017 Mboya claimed that he had been advised by an attorney that he should file a Bankruptcy case to avoid paying the taxes on the sale of the home in Dubai and needed to borrow money to pay for the associated legal fees.

82. In reliance on Mboya's statements Hardy lent $1,040 to Mboya.

83. Hardy no longer believes the avoidance of tax pretense given by Mboya.

84. In July of 2017 Mboya stated that he needed to borrow money in order to cash the $60,000 check from the aforementioned supposed Mercedes sale.

85. In reliance on Mboya's statements Hardy lent $2,700 to Mboya.

86. Hardy no longer believes that Mboya needed money for the stated purpose.

87. Hardy never had actual knowledge that any of Mboya's representations were false at the time she relied on them and it was not obvious at the time based on the information known to Hardy that any of the representations were false.

WHEREFORE, Hardy prays that all actual damages, as well as any punitive damages, awarded to Hardy as a result of Mboya's fraud be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Hardy requests that this Court grant her judgment as follows:

1. Award Hardy damages against Mboya for actual damages proximately caused by Defendant's fraud;

2. Award Hardy reasonable and necessary attorneys' fees and costs;

3. Award Hardy punitive damages against Mboya;

4. Award Hardy prejudgment and post judgment interest;

5. Declare all such amounts awarded to be non-dischargeable under 11 U.S.C. Section 523(a)(2); and

6. Award Hardy all such other and further relief to which it may be entitled.

Dated: October 19, 2017

Respectfully Submitted,

*s/ Keith A. Wellman*
Keith A. Wellman KS 22813
WELLMAN LAW LLC
9393 W. 110th St., Suite 500
Overland Park, KS 66210
(913) 608-3648 Phone
(888) 608-6656 Fax
keith@wellmanlaw.com
*Attorney for Debtor(s)*